**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Eugene Allen Doerr, | ) | No. CV 02-0582-PHX-PGR |
| | ) | |
| Petitioner, | ) | <u>DEATH PENALTY CASE</u> |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | **ORDER** |
| Dora Schriro, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |
|_____| ) | |

Petitioner Eugene Allen Doerr ("Petitioner") is a state prisoner sentenced to death. Pending before the Court are Petitioner's Motion for Discovery and Evidentiary Hearing and Petitioner's First Motion to Expand the Record Under Rule 7 of the Rules Governing Section 2254 Cases. (Dkts. 113, 115.)[1] Petitioner requests evidentiary development with regard to Claims 1, 6, 8, 10, 13, 28, 29 and 32-35.[2] Respondents filed responses, and Petitioner filed replies. (Dkts. 123-124, 127-128.)

Pursuant to the Court's general procedures governing resolution of capital habeas proceedings, the parties have completed briefing of both the procedural status and the merits of Petitioner's claims. Therefore, the Court will first determine whether the claims for which Petitioner seeks evidentiary development are appropriate for review on the merits by a

_____

[1] "Dkt." refers to the documents in this Court's case file.

[2] Although Petitioner includes Claims 14 and 30 on the first page of his motion for discovery and evidentiary hearing, he does not address the claims therein. (Dkt. 113 at 1.) Accordingly, the Court summarily denies evidentiary development of these claims.

1  federal habeas court, and also will address the merits of claims as appropriate.

2  **FACTUAL AND PROCEDURAL BACKGROUND**

3       On April 15, 1996, Petitioner was convicted by a jury of the premeditated and felony

4  first degree murder, kidnapping, and sexual assault of Karen Bohl.  (ROA 105-107.)[3]

5  Maricopa County Superior Court Judge Ronald Reinstein sentenced Petitioner to death for

6  the murder and to terms of imprisonment for the other counts.  (ROA 147.)  The Arizona

7  Supreme Court affirmed the convictions and sentences.  State v. Doerr, 193 Ariz. 56, 969

8  P.2d 1168 (1998).  Petitioner filed a petition for postconviction relief ("PCR") with the trial

9  court ("PCR court"), which denied it without an evidentiary hearing.  (PCR pet. filed

10 9/29/00; PCR ord. filed 6/29/01.)  In March 2002, the Arizona Supreme Court summarily

11 denied a petition for review from the denial of post-conviction relief.  (PR doc. 12.)

12 Petitioner thereafter commenced this action for a writ of habeas corpus.  (Dkt. 1.)

13 **PRINCIPLES OF EXHAUSTION AND PROCEDURAL DEFAULT**

14      Because this case was filed after April 24, 1996, it is governed by the Antiterrorism

15 and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA").  Lindh v. Murphy,

16 521 U.S. 320, 336 (1997); Woodford v. Garceau, 538 U.S. 202, 210 (2003).  The AEDPA

17 requires that a writ of habeas corpus not be granted unless it appears that the petitioner has

18 properly exhausted all available state court remedies.  28 U.S.C. § 2254(b)(1); see also

19 Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509 (1982).  To

20 properly exhaust state remedies, the petitioner must "fairly present" his claims to the state's

21

22 ───────────────

23      [3] "ROA" refers to a three-volume record on direct appeal to the Arizona Supreme
    Court (No. CR 94-08531/CR-96-679-AP).  "Instr." refers to one volume of Photostated
24  Instruments of the Record on Appeal to the Arizona Supreme Court (CR94-08531).  "ME"
    refers to one volume of Photostated Minute Entries of the Record on Appeal (CR94-8531).
25  "ROA doc." refers to documents in the one-volume record of Petitioner's supplemental
    appeal (CR96-679).  "PCR" refers to the one-volume record of Petitioner's PCR proceedings
26  (CR 94-08531).  "PR doc." refers to documents in the record on appeal from denial of PCR
    relief (CR 01-308-PC).  "RT" refers to reporter's transcript.  The original reporter's
27  transcripts and certified copies of the trial and post-conviction records were provided to this
    Court by the Arizona Supreme Court on June 28, 2005.  (Dkt. 131.)
28

highest court in a procedurally appropriate manner.  O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999).

A claim is "fairly presented" if the petitioner has described the operative facts and the federal legal theory on which his claim is based so that the state courts have a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.  Anderson v. Harless, 459 U.S. 4, 6 (1982); Picard v. Connor, 404 U.S. 270, 277-78 (1971).[4]  If a petitioner's habeas claim includes new factual allegations not presented to the state court, the claim may be considered unexhausted if the new facts "fundamentally alter" the legal claim presented and considered in state court.  Vasquez v. Hillery, 474 U.S. 254, 260 (1986).

A habeas petitioner's claims may be precluded from federal review in either of two ways.  First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds.  Coleman, 501 U.S. at 729-30.  Second, a claim may be procedurally defaulted in federal court if the petitioner failed to present the claim in any forum and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  Id. at 735 n.1.  This is often referred to as "technical" exhaustion – although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy.  See Gray v. Netherland, 518 U.S. 152, 161-62 (1996) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him.").

Rule 32 of the Arizona Rules of Criminal Procedure governs when petitioners may seek relief in post-conviction proceedings and raise federal constitutional challenges to their

---

[4] Resolving whether a petitioner has fairly presented his claim to the state court, thus permitting federal review, is an intrinsically federal issue which must be determined by the federal court.  Wyldes v. Hundley, 69 F.3d 247, 251 (8th Cir. 1995); Harris v. Champion, 15 F.3d 1538, 1556 (10th Cir. 1994).

1    convictions or sentences in state court.  Rule 32.2 provides, in part:

2        a.  Preclusion.  A defendant shall be precluded from relief under this
     rule based upon any ground:
3    . . . .

4        (2)  Finally adjudicated on the merits on appeal or in any previous
     collateral proceeding;
5
        *(3)  That has been waived at trial, on appeal, or in any previous*
6    *collateral proceeding.*

7        b.  Exceptions.  Rule 32.2(a) shall not apply to claims for relief based
     on Rules 32.1(d), (e), (f), (g) and (h).  When a claim under [these sub-sections]
8    is raised in a successive or untimely petition, the petition must set forth the
     reasons for not raising the claim in the previous petition or in a timely manner.
9    If meritorious reasons do not appear substantiating the claim and indicating
     why the claim was not stated in the previous petition or in a timely manner, the
10   petition shall be summarily dismissed.

11   Ariz. R. Crim. P. 32.2 (2002) (emphasis added).  Thus, pursuant to Rule 32.2, petitioners

12   may not be granted relief on any claim which could have been raised in a prior Rule 32

13   petition for post-conviction relief.  Similarly, pursuant to Rule 32.4, petitioners must seek

14   relief in a timely manner.  Only if a claim falls within certain exceptions (subsections (d)

15   through (h) of Rule 32.1) and the petitioner can justify why the claim was omitted from a

16   prior petition or was not presented in a timely manner will the preclusive effect of Rule 32.2

17   be avoided.  Ariz. R. Crim. P. 32.2(a) (3), 32.4(a).

18       Therefore, in the present case, if there are claims which have not been raised

19   previously in state court, the Court must determine whether Petitioner has state remedies

20   currently available to him pursuant to Rule 32.  If no remedies are currently available,

21   petitioner's claims are "technically" exhausted but procedurally defaulted.  Coleman, 501

22   U.S. at 732, 735 n.1.  In addition, if there are claims that were fairly presented in state court

23   but found defaulted on state procedural grounds, such claims also will be found procedurally

24   defaulted in federal court so long as the state procedural bar was independent of federal law

25   and adequate to warrant preclusion of federal review.  Harris v. Reed, 489 U.S. 255, 262

26   (1989).  A state procedural default is not independent if, for example, it depends upon an

27   antecedent federal constitutional ruling.  See Stewart v. Smith, 536 U.S. 856 (2002) (per

28   curiam).  A state bar is not adequate unless it was firmly established and regularly applied

1   at the time of application by the state court.  Ford v. Georgia, 498 U.S. 411, 424 (1991).

2       Because the doctrine of procedural default is based on comity, not jurisdiction, federal

3   courts retain the power to consider the merits of procedurally defaulted claims.  Reed v.

4   Ross, 468 U.S. 1, 9 (1984).  As a general matter, the Court will not review the merits of

5   procedurally defaulted claims unless a petitioner demonstrates legitimate cause for the failure

6   to properly exhaust in state court and prejudice from the alleged constitutional violation, or

7   shows that a fundamental miscarriage of justice would result if the claim were not heard on

8   the merits in federal court.  Coleman, 501 U.S. at 735 n.1.  Petitioner does not argue that a

9   fundamental miscarriage of justice excuses any default found as to the claims at issue herein.

10  (Dkt. 105 at 22-34.)

11      Ordinarily "cause" to excuse a default exists if a petitioner can demonstrate that "some

12  objective factor external to the defense impeded counsel's efforts to comply with the State's

13  procedural rule."  Id.. at 753.  Objective factors which constitute cause include interference

14  by officials which makes compliance with the state's procedural rule impracticable, a

15  showing that the factual or legal basis for a claim was not reasonably available to counsel,

16  and constitutionally ineffective assistance of counsel.  Murray v. Carrier, 477 U.S. 478, 488

17  (1986).  "Prejudice" is actual harm resulting from the alleged constitutional error.  Magby

18  v. Wawrzaszek, 741 F.2d 240, 244 (9th Cir. 1984).  To establish prejudice resulting from a

19  procedural default, a habeas petitioner bears the burden of showing not merely that the errors

20  at his trial constituted a possibility of prejudice, but that they worked to his actual and

21  substantial disadvantage, infecting his entire trial with errors of constitutional dimension.

22  United States v. Frady, 456 U.S. 152, 170 (1982).

23                    **PROCEDURAL STATUS OF CLAIMS**

24      The Court reviews the procedural status of the claims for which evidentiary

25  development is sought:  Claims 1, 6, 8, 10, 13, 28, 29 and 32-35.  Respondents concede that

26  Claims 6, 8 (in part), 10, 13 (in part), 28 (in part) and 32 are properly exhausted.  (Dkt. 99

27  at 1.) Respondents contest exhaustion, and in one instance, ripeness, of the remaining claims.

28  With respect to the claims that Respondents argue are procedurally defaulted, Petitioner

1   generally argues that he can establish cause for the default based on the ineffective assistance

2   of counsel ("IAC") in PCR proceedings.  (Dkt. 105 at 22-105.)  The Court first addresses this

3   argument because it is relevant to numerous claims.

4          IAC can establish sufficient cause only when it rises to the level of an independent

5   constitutional violation.  Coleman, 501 U.S. at 755.  Thus, before ineffectiveness may be

6   used to establish cause for a procedural default, it must have been presented to the state court

7   as an independent claim.  See Edwards v. Carpenter, 529 U.S. 446, 451-53 (2000)

8   ("ineffective-assistance-of-counsel claim asserted as cause for the procedural default of

9   another claim can itself be procedurally defaulted"); Murray, 477 U.S. at 489-90 ("the

10  exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented

11  to the state courts as an independent claim before it may be used to establish cause for a

12  procedural default."); Tacho v. Martinez, 862 F.2d 1376, 1381 (9th Cir. 1988) (exhaustion

13  requires petitioner to first raise ineffective appellate counsel claim separately in state court

14  before alleging it as cause for default).  However, when a petitioner has no constitutional

15  right to counsel, there can be no constitutional violation arising out counsel's ineffectiveness.

16  Coleman, 501 U.S. at 752.  There is no constitutional right to the effective assistance of

17  counsel in state post-conviction proceedings.  See Pennsylvania v. Finley, 481 U.S. 551, 555

18  (1987); Murray v. Giarratano, 492 U.S. 1, 7-12 (1989) (the Constitution does not require

19  states to provide counsel in PCR proceedings even when the putative petitioners are facing

20  the death penalty); Bargas v. Burns, 179 F.3d 1207, 1215 (9th Cir. 1999) (holding that IAC

21  in PCR proceeding cannot constitute cause); Bonin v. Vasquez, 999 F.2d 425, 429-30 (9th

22  Cir. 1993) (refusing to extend the right of effective assistance of counsel to state collateral

23  proceedings); Harris v. Vasquez, 949 F.2d 1497, 1513-14 (9th Cir. 1990).

24         The fact that the PCR proceeding was Petitioner's first and only opportunity to assert

25  claims of IAC at trial and on appeal does not change the analysis.  In Evitts v. Lucey, 469

26  U.S. 387, 396 (1985), the Court held that a petitioner is entitled to effective assistance of

27  counsel on a first appeal as of right.  However, since Evitts was decided, the courts have

28  clarified that the holding in Evitts applies strictly to a first appeal as of right, even if

1   particular types of claims could not have been raised in that appeal, because there is no

2   constitutional right to counsel in state PCR proceedings. See Finley, 481 U.S. at 558; Moran

3   v. McDaniel, 80 F.3d 1261, 1271 (9th Cir. 1996); Bonin v. Calderon, 77 F.3d 1155, 1159

4   (9th Cir. 1996) (IAC claim defaulted for not being raised in first habeas petition, even though

5   the same counsel represented petitioner in both proceedings, because no right to counsel in

6   habeas proceedings); Jeffers v. Lewis, 68 F.3d 299, 300 (9th Cir. 1995) (en banc) (plurality)

7   (ruling an Arizona petitioner had "no Sixth Amendment right to counsel during his state

8   habeas proceedings even if that was the first forum in which he could challenge

9   constitutional effectiveness on the part of trial counsel"); see also Evitts, 469 U.S. at 396 n.7

10  (noting that discretionary appeals are treated differently because there is no right to counsel).

11  Petitioner's argument fails because there is no constitutional right to counsel for PCR

12  proceedings even if it is an Arizona petitioner's first opportunity to raise an IAC claim.

13       The Court is also unpersuaded by Petitioner's contention that Arizona court rules

14  render the PCR proceeding part of a mandatory bifurcated appellate process for capital cases

15  with a statutory right to counsel and, therefore, due process requires such counsel to be

16  effective.  Petitioner cites no case, and the Court has found none, which holds that a state is

17  required by the federal constitution to provide counsel in PCR proceedings.  The fact that a

18  state may, "as a matter of legislative choice," Ross v. Moffitt, 417 U.S. 600, 618 (1974),

19  provide for counsel in discretionary appeals following a first appeal of right does not extend

20  the Sixth Amendment's guarantee of effective counsel to discretionary appeals.  See Evitts,

21  469 U.S. at 394, 397 n.7; Finley, 481 U.S. at 559 (where a state provides a lawyer in a state

22  post-conviction proceeding, it is not "the Federal Constitution [that] dictates the exact form

23  such assistance must assume," rather, it is in a state's discretion to determine what

24  protections to provide).  Further, the Ninth Circuit has held explicitly that "ineffective

25  assistance of counsel in habeas corpus proceedings does not present an independent violation

26  of the Sixth Amendment enforceable against the states through the Due Process Clause of

27  the Fourteenth Amendment." Bonin, 77 F.3d at 1160.  Because Petitioner's PCR proceeding

28  took place after his appeal of right, it was a discretionary proceeding that did not confer a

1   constitutional right to the effective assistance of counsel.  Thus, even assuming PCR

2   counsel's performance did not conform to minimum standards, it did not violate the federal

3   constitution and cannot excuse the procedural default of any claims.

4        Further, even if cognizable, ineffective assistance of PCR counsel cannot constitute

5   cause to excuse a procedural default when it has never been presented as an independent

6   claim in state court.  See Edwards, 529 U.S. at 451-53; Murray, 477 U.S. at 489-90; Tacho,

7   862 F.2d at 1381.  Petitioner did not present any independent claim of ineffectiveness

8   regarding PCR counsel in state court.  Thus, the alleged ineffectiveness of PCR counsel

9   cannot constitute cause to excuse any procedural default found by the Court and such

10  assertions are not further considered herein.

11  **Claim 1**

12       Claim 1 alleges the trial court violated Petitioner's Fifth, Sixth, Eighth and Fourteenth

13  Amendment rights by admitting testimony from Phoenix Police Detective Charles Gregory

14  that he believed Petitioner untruthfully claimed to have no memory of the events the night

15  of the murder.  (Dkt. 82 at 42-47.)  Respondents contend these allegations were not presented

16  to the state court as violations of federal law but only as violations of state evidentiary rules.

17  (Dkt. 99 at 22.)

18       Petitioner presented this claim on direct appeal, alleging a violation of his federal due

19  process and impartial jury rights.  (Opening Br. at 9.)  Therefore, the Court finds this claim

20  exhausted to the extent Petitioner alleges violation of the due process and impartial jury

21  provisions of the Fourteenth and Sixth Amendments.  However, the Fifth and Eighth

22  Amendment aspects of this claim are not cognizable.  It is the Fourteenth Amendment, not

23  the Fifth Amendment that protects a person against deprivations of due process by a state.

24  See U.S. Const. amend. XIV, § 1 ("nor shall any state deprive any person of life, liberty, or

25  property without due process of law"); Castillo v. Mc Fadden, 399 F.3d 993, 1002 n.5 (9th

26  Cir. 2005) ("The Fifth Amendment prohibits the federal government from depriving persons

27  of due process, while the Fourteenth Amendment explicitly prohibits deprivations without

28  due process by the several states.").  In addition, the right to be free from cruel and unusual

1   punishment, by definition, is a protection related to the imposition or carrying out of a
2   sentence.  In other words, the protection afforded by the Eighth Amendment does not attach
3   until a person is convicted and subject to punishment by the state.  See Ingraham v. Wright,
4   430 U.S. 651, 664, 667, 671 n.40 (1977); Bell v. Wolfish, 441 U.S. 520, 536 n.16 (1979).
5   Because Claim 1 is a conviction-related claim, the Eighth Amendment does not provide a
6   cognizable ground for relief.  The Fifth and Eighth Amendment aspects of Claim 1 will be
7   dismissed.

8   **Claim 8**

9   Claim 8 alleges the sentencing court violated Petitioner's Fifth, Sixth, Eighth and
10  Fourteenth Amendment rights under Lockett v. Ohio, 438 U.S. 586 (1978), and Eddings v.
11  Oklahoma, 455 U.S. 104 (1982), by improperly refusing to accord mitigating weight to
12  proffered evidence that he cooperated with the police.  (Dkt. 82 at 89-92.)  At sentencing,
13  Petitioner argued that his "cooperation with law enforcement and calling '911' to turn
14  himself in" was a non-statutory mitigating factor.  (ROA 143.)  The trial court found that
15  Petitioner's cooperation was motivated by self-interest and that he had not proved by a
16  preponderance of the evidence that his cooperation warranted mitigating weight, which the
17  Arizona Supreme Court affirmed.  (RT 11/27/96 at 13; dkt. 99, ex. A at ¶¶ 66-67.)

18  Regardless of exhaustion, the Court will dismiss this claim because it is plainly
19  meritless.  See 28 U.S.C. § 2254(b)(2) (allowing denial of unexhausted claims on the merits);
20  Rhines v. Weber, 125 S. Ct. 1528, 1535 (2005) (holding that a stay is inappropriate in federal
21  court to allow claims to be raised in state court if they are subject to dismissal under (b)(2)
22  as "plainly meritless.").  The Constitution requires only that the sentencing court hear and
23  consider all evidence proffered as mitigation; it does not require the sentencer to accord any
24  particular *weight* to such evidence.  See Eddings, 455 U.S. at 114-15; Ortiz v. Stewart, 149
25  F.3d 928, 943 (9th Cir. 1998) (finding no constitutional violation where sentencing court
26  considered evidence but found it inadequate to justify leniency; "a sentencer is free to assess
27  how much weight to assign to such evidence"); Vickers v. Stewart, 144 F.3d 613, 617 (1998)
28  (finding it within trial court's discretion to consider but reject particular evidence as

mitigating).  The trial court stated on the record that it considered Petitioner's cooperation but found it was motivated by self-interest and, therefore, did not warrant mitigating weight. (RT 11/27/96 at 13.)  The court's consideration of the evidence proffered in mitigation satisfied its constitutional duties.  See Lockett, 438 U.S. at 604-05.  Accordingly, Claim 8 will be denied on the merits.

**Claim 13**

Claim 13 alleges that Petitioner's right to a fair trial was violated by the trial court's rejection of brain damage as non-statutory mitigation.  (Dkt. 82 at 111.)  Specifically, Petitioner faults the trial court for rejecting defense expert testimony that he had brain damage in favor of contrary findings by a prosecution expert. (Id. at 111-15.)  At sentencing, the court found that the defense experts' opinions were speculative and that, even if brain damage had been established, the damage was minimal and did not affect Petitioner's ability to appreciate either right from wrong or the wrongfulness of his conduct under A.R.S. § 13-703(G)(2).  (RT 11/27/96 at 10-11.)

Regardless of exhaustion, the Court will dismiss this claim because it is plainly meritless.  See 28 U.S.C. § 2254(b)(2); Rhines, 125 S. Ct. at 1535.  There is no federal constitutional requirement that a sentencer find proffered evidence mitigating or assign any particular weight to it in the sentencing calculus.  Eddings, 455 U.S. at 114-15.  Here, Petitioner is not asserting that the state courts failed to *consider* proffered mitigating evidence at sentencing.  Rather, the core of his complaint is that the sentencing court did not find proffered evidence mitigating.  Such a claim does not provide a basis for federal habeas corpus relief.  Id.  The record demonstrates that the trial court considered Petitioner's proffered evidence of brain damage but found it speculative and not mitigating.  This consideration complied with the court's federal constitutional duties.  Accordingly, Claim 13 will be denied on the merits.

**Claim 28**

Claim 28 alleges that Petitioner's Fifth, Sixth, Eighth and Fourteenth Amendment rights to the effective assistance of counsel were violated by trial counsel's failure to:

(a) present a reasonable defense at trial, and (b) adequately investigate mental impairments and to present evidence of the same at trial and sentencing.  (Dkt. 82 at 161-90; 105 at 116.)

*Trial*

The core of Petitioner's IAC claim with respect to counsel's representation at trial is that counsel failed to adequately investigate evidence that he was an alcoholic subject to blackouts, had been intoxicated at the time of the crime, had brain damage and was subject to impulsive violence whether intoxicated or sober.  Petitioner asserts that, had counsel fully investigated these facts, he could have presented a defense based on impulsivity caused by a brain seizure disorder.  (Dkt. 82 at 170.)  He further asserts that this evidence would have raised a reasonable doubt about Petitioner's "ability to form the requisite intent to justify a first degree murder conviction."  (Id. at 172.)  The parties dispute whether this claim was properly exhausted; regardless, the Court will dismiss it because it is plainly meritless.  See 28 U.S.C. § 2254(b)(2); Rhines, 125 S. Ct. at 1535.

The PCR court ruled that because Petitioner's intoxication was voluntary, it could not be relied on to rebut or negate evidence of premeditation.  (PCR ord. filed 6/29/01 at 2-3.)  It further found that the evidence of a prolonged struggle established that Petitioner had the opportunity to reflect on his actions and refuted the assertion that the victim was killed in the heat of passion or sudden quarrel.  (Id. at 3.)  In addition, it found that Petitioner's "propounded psychological defense [was] based solely on speculation, conjecture, and guesswork."  (Id. at 4.)  The court continued by stating:

> As the Supreme Court pointed out in the Opinion in this case as to the mitigating factors, the defense overstated the testimony of its witnesses.  Dr. Walter admitted that he didn't independently evaluate the defendant, and his testimony was equivocal at best.  All of the defense experts at sentencing attempted to gloss over the results of the PETSCAN, which the defendant ordered and which showed no evidence of brain damage.  All of them relied heavily on the defendant's own self-serving statements.  While the psychological testimony was relevant as to the court's determination in the A.R.S. Section 13-703 hearing, one reason trial counsel probably did not seek to utilize a "psychological defense" was that it wasn't realistic, given the state of the law on voluntary intoxication, temporary insanity, and premeditation, as well as the crime scene evidence.

(Id.)  Finally, the court found that even if counsel had performed deficiently, overwhelming

1    evidence precluded a showing of prejudice.  (Id.)  A petition for review to the Arizona

2    Supreme Court was summarily denied.  (PR doc. 12.)

3         To prevail on a claim of IAC, Petitioner must show that counsel's performance was

4    deficient, and that the deficiency prejudiced the defense.  Strickland v. Washington, 466 U.S.

5    668, 690 (1984).  To establish prejudice, a petitioner must show that there is a "reasonable

6    probability" that, absent counsel's alleged errors, the result of the trial would have been

7    different.  Id. at 694.

8         It appears to the Court that Petitioner's IAC claim confuses a "diminished capacity"

9    defense with a strategy of presenting character trait evidence to negate premeditation.  Under

10   Arizona law, only the latter is permitted; the state has long rejected the affirmative defense

11   of diminished capacity.  State v. Mott, 187 Ariz. 536, 540-41, 931 P.2d 1046, 1050-51 (1997)

12   (citing State v. Schantz, 98 Ariz. 200, 212-13, 403 P.2d 521, 529 (1965)).  The practical

13   effect is that a defendant cannot, during trial, present evidence of mental disease or defect

14   to show that he was *incapable* of forming a requisite mental state for a charged offense.

15   Mott, 187 Ariz. at 540, 931 P.2d at 1050; Schantz, 98 Ariz. at 213, 403 P.2d at 529.  In

16   addition, effective January 2, 1994, Arizona eliminated voluntary intoxication as an

17   affirmative defense:

18        Temporary intoxication resulting from the voluntary ingestion, consumption,
          inhalation or injection of alcohol, an illegal substance under chapter 34 of this
19        title or other psychoactive substances or the abuse of prescribed medications
          does not constitute insanity and is not a defense for any criminal act or
20        requisite state of mind.

21   A.R.S. § 13-503.  Therefore, evidence of intoxication is irrelevant to a jury's determination

22   of knowledge or intent to commit an offense.

23        Arizona law does permit a defendant to present evidence to show that he has a

24   character trait for acting reflexively, rather than reflectively, for the purpose of challenging

25   a finding of premeditation, i.e., to show that he did not actually reflect after forming the

26   requisite intent.  See State v. Christensen, 129 Ariz. 32, 35-36, 628 P.2d 583-84 (1981);

27   Vickers v. Ricketts, 798 F.2d 369, 371 (9th Cir. 1986); see also State v. Dann, 205 Ariz. 557,

28   565, 74 P.3d 231, 239 (2003) (citing cases); State v. Thompson, 204 Ariz. 471, 427-28, 65

- 12 -

1   P.3d 420, 478-79 (2003) (premeditation means that the defendant intended to kill or knew

2   that he would kill and that, after forming intent or knowledge, he actually reflected on the

3   decision before killing, thus differentiating premeditated murder from second degree

4   murder); State v. Willoughby, 181 Ariz. 530, 539, 892 P.2d 1319, 1328 (1995) (same).  In

5   Christensen, the defendant sought, pursuant to Rule 404(a)(1) of the Arizona Rules of

6   Evidence, admission of expert testimony regarding his tendency to act without reflection.

7   The Arizona Supreme Court held it was error to exclude such testimony because

8   "establishment of [this character trait] tends to establish that appellant acted impulsively.

9   From such a fact, the jury could have concluded that he did not premeditate the homicide."

10  Id. at 35, 628 P.2d at 583.  The holding was limited, however, in that the expert could not

11  testify to whether the defendant was acting impulsively at the time of the offense.  Id. at 35-

12  36, 628 P.2d at 583-84.

13       It is clear from a review of Arizona law that evidence of impulsivity as permitted in

14  Christensen may not be presented for the purpose of negating a mental state (which would,

15  in essence, constitute a prohibited diminished capacity defense).  Rather, impulsivity is

16  relevant only to the question of whether a defendant, *after* forming the necessary knowledge

17  or intent to commit murder, reflected on the decision to kill and thereby acted with

18  premeditation.  In this case, Petitioner was charged and convicted on separate counts of both

19  premeditated murder and felony murder, both of which constitute capital-eligible first degree

20  murder under Arizona law.  The jury's verdict on each count was unanimous.  (ROA 105.)

21       The Court concludes that, regardless of whether counsel performed deficiently with

22  respect to presenting evidence to negate premeditation, Petitioner cannot establish prejudice.

23  None of the proffered evidence of Petitioner's alleged intoxication, blackouts and/or brain

24  disorder would have been admissible at trial to negate the requisite mental state for felony

25  murder or its predicate felonies because Arizona does not allow either a diminished capacity

26  or an intoxication defense.  In other words, even had counsel conducted the investigation

27  now urged, there is no reasonable likelihood that no juror would have convicted Petitioner

28  of felony murder or its underlying predicates because evidence of impulsivity is irrelevant

1    to those counts.  A felony murder finding is sufficient alone to sustain a conviction for first

2    degree murder, independent of a finding that the murder was premeditated.  See State v.

3    Tucker, 205 Ariz. 157, 167, 68 P.3d 110, 120 (2003) (first degree murder conviction may be

4    based on either premeditated or felony murder); State v. Smith, 160 Ariz. 507, 513, 774 P.2d

5    811, 817 (1989) (defendant not entitled to new trial where jury convicted of felony murder

6    but acquitted of premeditated murder as inconsistent verdicts); cf. State v. Lopez, 158 Ariz.

7    258, 265-66, 762 P.2d 545, 552-53 (1988) (remand required where jury verdict did not

8    indicate whether conviction for felony and/or premeditated murder and insufficient evidence

9    supported predicate felony for felony murder).  For these reasons, the Court denies Claim 28,

10   as to IAC at trial, on the merits.

11        *Sentencing*

12        Petitioner alleges IAC based on trial counsel's failure to adequately investigate and

13   prepare for the sentencing hearing.  (Dkt. 82 at 172, 175-78, 180, 181-84, 188.)  However,

14   Petitioner did not present this issue to the state courts, either on appeal or in his PCR petition.

15   He is now precluded by Rules 32.2 and 32.4 from obtaining relief in state court, and no

16   exception to preclusion appears applicable.[5]  Therefore, the sentencing portion of this claim

17   _____

18        [5] First, Petitioner does not assert that any of the preclusion exceptions enumerated in
     Rule 32.2(b)(2) apply, see Beaty v. Stewart, 303 F.3d 975, 987 &  n.5 (9th Cir. 2002)

19   (finding no state court remedies and noting that petitioner did not raise any exceptions to
     Rule 32.2(a)), and the Court finds none applicable, see Ariz. R. Crim. P. 32.2(b)(2); 32.1(d)-

20   (h).  Second, Petitioner does not argue that Claim 28 is the type of claim that cannot be
     waived absent a personal knowing, voluntary and intelligent waiver.  Cf. Cassett v. Stewart,

21   406 F.3d 614, 622-23 (9th Cir. 2005) (addressing waiver because raised by petitioner).  The

22   Court finds that Claim 28 does not fall within the limited framework of claims requiring a
     knowing, voluntary and intelligent waiver.  See Ariz. R. Crim. P. 32.2(a)(3) cmt. (West

23   2004) (noting that most claims of trial error do not require a personal waiver); Stewart v.

24   Smith, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (identifying the right to counsel, right

25   to a jury trial and right to a 12-person jury under the Arizona Constitution as the type of
     claims that require personal waiver); see also State v. Espinosa, 200 Ariz. 503, 505, 29 P.3d

26   278, 280 (Ct. App. 2001) (withdrawal of plea offer in violation of due process not a claim

27   requiring personal waiver); but cf. Cassett, 406 F.3d at 622-23 (finding claim not defaulted
     because unclear whether personal waiver would be required under state law).

28        As an additional matter, if different IAC allegations are raised in a first PCR petition

1   is procedurally barred absent a showing of cause and prejudice or a fundamental miscarriage

2   of justice.  Petitioner only alleges IAC of PCR counsel as cause.  As discussed above, IAC

3   of PCR counsel does not constitute cause to excuse a procedural default.  Petitioner does not

4   assert that a fundamental miscarriage of justice will occur if the claim is not heard on the

5   merits.  Accordingly, the Court finds Claim 28, as to IAC at sentencing, procedurally barred.

6   **Claim 29**

7   Claim 29 alleges that police failure to preserve biological evidence by promptly

8   seeking to obtain a breath, blood or urine sample from Petitioner violated his Sixth, Eighth

9   and Fourteenth Amendment rights.  Petitioner presented this claim in his PCR petition.

10  However, in his petition for review to the Arizona Supreme Court, Petitioner simply listed

11  the claim under the heading, "Issues Raised in PCR and Summarily Denied by the Trial

12  Court." (PR doc. 12 at 4.)  He did not include the claim in the subsequent, primary section

13  of the brief, "Issues Presented to this Court for Review and the Facts Material to a

14  Consideration of Same."  (Id. at 4-24.)  The Court therefore finds that Petitioner failed to

15  fairly present Claim 29 to the State's highest court as he was required to do.  See Baldwin

16  v. Reese, 541 U.S. 27, 32 (2004).  He is now precluded by Rules 32.2 and 32.4 from

17  obtaining relief in state court, and no exception to preclusion appears applicable.  See supra

18  note 6.  Therefore, the claim is procedurally barred absent a showing of cause and prejudice

19  or a fundamental miscarriage of justice.

20  Even if the claim had been fairly presented to the Arizona Supreme Court, it was

21  dismissed on independent and adequate state grounds by the PCR court.  Specifically, the

22  court ruled:

23          To the extent that any of the defendant's claims raise anything but
            ineffective assistance of trial or appellate counsel, relief is precluded pursuant
24          to Rule 32.2 of the Arizona Rules of Criminal Procedure and A.R.S. Section
            14-4232, as those claims either were raised or could have been raised in the
25

─────────────────────────

26  and a successive petition, the claim(s) in the later petition will be found precluded without

27  a review of the constitutional magnitude of the claim.  See Smith, 202 Ariz. at 450, 46 P.3d

28  at 1071.  Petitioner raised other IAC allegations in his first PCR petition; therefore,
    successive claims of IAC are necessarily precluded.

> defendant's appeal.  None of the defendant's claims constitute exceptions to the preclusion rule or statute.
>
>       The defendant's claims as to the insufficiency of evidence for the kidnapping conviction, whether sexual assault and/or kidnapping can be a predicate felony for a charge of felony murder, and the claims as to the alleged failure of the state to timely collect biological evidence from the defendant are all precluded, *since they could have been raised on appeal*, except as any of the claims relate to the defendant's claim of ineffective assistance of counsel.

(PCR ord. filed 6/29/01 at 1-2; emphasis added.)  Despite Petitioner's assertion to the contrary (dkt. 105 at 127), the PCR court clearly delineated the basis for its preclusion ruling. For these reasons, the Court finds that Claim 29 is procedurally defaulted.  Petitioner does not assert cause and prejudice or a fundamental miscarriage of justice to excuse the default. Therefore, Claim 29 will be dismissed as procedurally barred.

**Claim 33**

Petitioner alleges that execution by the State after more than six years on death row fails to serve any legitimate penological purpose and violates his Eighth Amendment right to be free from cruel and unusual punishment.  (Dkt. 82 at 222.)  Petitioner concedes he did not present this claim to the state courts.  (Id.)

Regardless of whether Petitioner properly exhausted this claim, the Court will deny it as meritless.  See 28 U.S.C. § 2254(b)(2).  Petitioner acknowledges the Supreme Court has not decided whether lengthy incarceration prior to execution can constitute cruel and unusual punishment.  (Dkt. 82 at 223, 230-32, citing Lackey v. Texas, 514 U.S. 1045 (1995) (mem.) (Stevens, J. & Breyer, J., discussing denial of certiorari and noting the claim has not been addressed)).  In contrast, circuit courts including the Ninth Circuit Court of Appeals hold prolonged incarceration under a sentence of death does not offend the Eighth Amendment. See McKenzie v. Day, 57 F.3d 1493, 1493-94 (9th Cir. 1995) (en banc); White v. Johnson, 79 F.3d 432, 438 (5th Cir. 1996) (delay of 17 years); Stafford v. Ward, 59 F.3d 1025, 1028 (10th Cir. 1995) (delay of 15 years).  Therefore, habeas relief on Claim 33 will be denied.

**Claim 34**

Petitioner alleges he will not be competent to be executed.  (Dkt. 82 at 244.)  Both Petitioner and Respondents acknowledge this allegation is not ripe and is premature for

1   federal review.  (Id.; dkt. 99 at 133.)  Pursuant to Martinez-Villareal v. Stewart, 118 F.3d

2   628, 634 (9th Cir. 1997), aff'd, 523 U.S. 637 (1998), a claim of incompetency for execution

3   "must be raised in a first habeas petition, whereupon it also must be dismissed as premature

4   due to the automatic stay that issues when a first petition is filed."  If again presented to the

5   district court once the claim becomes ripe for review, it shall not be treated as a second or

6   successive petition.  See id. at 643-44.  Therefore, the Court will dismiss Claim 34 without

7   prejudice as premature.

8        **Claim 35**

9        Petitioner alleges his rights under the Fifth, Eighth and Fourteenth Amendments will

10  be violated because he will not receive a fair clemency proceeding.  In particular, he alleges

11  the proceeding will not be fair and impartial based on the Board's selection process,

12  composition, training and procedures, and because the Attorney General acts as the

13  Clemency Board's legal advisor as well as an advocate against the petitioner.  Petitioner

14  concedes he did not fairly present this claim to the state courts.  (Dkt. 82 at 247.)  More

15  significantly, however, this claim is not cognizable on federal habeas review.  Habeas relief

16  can only be granted on claims that a prisoner "is in custody in violation of the Constitution

17  or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Petitioner's challenges to state

18  clemency procedures and/or proceedings do not represent an attack on his detention – his

19  conviction or sentence – and thus do not constitute proper grounds for relief.  See Franzen

20  v. Brinkman, 877 F.2d 26, 26 (9th Cir. 1989) (per curiam); see also Woratzeck v. Stewart,

21  118 F.3d 648, 653 (9th Cir. 1997) (per curiam) (clemency claims are not cognizable under

22  federal habeas law).  Therefore, the Court will dismiss Claim 35 as not cognizable in a

23  federal habeas petition.

24            **Summary of Procedural Status Findings**

25        The Court concludes that Claims 8, 13, 28 (in part) and 33 are meritless, that Claims

26  28 (in part) and 29 are procedurally barred, and that Claims 1 (in part) and 35 fail to state

27  cognizable grounds for habeas relief.  These claims or portions of claims will be dismissed

28  with prejudice.  Claim 34 is premature and will be dismissed without prejudice.

1   Accordingly, Petitioner's motions for evidentiary development as to Claims 1 (in part), 8, 13,

2   28, 29 and 33-35 will be summarily denied.

3               **LEGAL STANDARD FOR EVIDENTIARY HEARING,
                **EXPANSION OF THE RECORD AND DISCOVERY**

4       **Evidentiary Hearing**

5       The decision whether to grant an evidentiary hearing when there are material facts in

6   dispute is generally at the discretion of the district court judge.  See Townsend v. Sain, 372

7   U.S. 293, 312, 318 (1963), overruled in part by Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992),

8   and limited by § 2254(e)(2); Baja v. Ducharme, 187 F.3d 1075, 1077 (9th Cir. 1999); Rule

9   8, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (providing that the district court

10  judge shall determine if an evidentiary hearing is required).  However, a judge's discretion

11  is significantly circumscribed by § 2254(e)(2) of the AEDPA.  See Williams v. Taylor, 529

12  U.S. 420 (2000).

13      Section 2254 provides that:

14      *If the applicant has failed to develop the factual basis of a claim in State court*
        *proceedings, the court shall not hold an evidentiary hearing on the claim*

15      *unless the applicant shows that –*

16      (A) the claim relies on –

17              (i) a new rule of constitutional law, made retroactive to cases on

18              collateral review by the Supreme Court, that was previously
                unavailable; or

19              (ii) a factual predicate that could not have been previously discovered

20              through the exercise of due diligence; and

21      (B) the facts underlying the claim would be sufficient to establish by clear and
        convincing evidence that but for constitutional error, no reasonable factfinder

22      would have found the applicant guilty of the underlying offense.

23  28 U.S.C. § 2254(e)(2) (emphasis added).

24      As interpreted by the Supreme Court, subsection (e)(2) precludes an evidentiary

25  hearing in federal court only if the failure to develop a claim's factual basis is due to a "lack

26  of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."

27  Williams, 529 U.S. at 432.  "The purpose of the fault component of 'failed' is to ensure the

28  prisoner undertakes his own diligent search for evidence."  Id. at 435.  The Court found that

this rule served AEDPA's goal of furthering comity in that "federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." Id.; see also Cardwell v. Netherland, 971 F. Supp. 997, 1008 (E.D. Va. 1997) ("Ordinarily, a § 2254 petition is limited to the factual record developed in state court proceedings"), aff'd Cardwell v. Greene, 152 F.3d 331 (4th Cir. 1998), overruled on other grounds, Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000).   In correlation, subsection (e)(2) allows factual development when a petitioner diligently attempts to develop the factual basis of a claim in state court and is "thwarted, for example, by the conduct of another or by happenstance was denied the opportunity to do so." Williams, 529 U.S. at 432; see Baja, 187 F.3d at 1078-79.

In compliance with § 2254(e)(2), when the factual basis for a particular claim has not been fully developed in state court, the first question for a district court in evaluating whether to grant an evidentiary hearing on the claim is whether the petitioner was diligent in attempting to develop its factual basis.  See Baja, 187 F.3d at 1078 (quoting Cardwell v. Greene, 152 F.3d 331, 337 (4th Cir. 1998), overruled on other grounds, Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000)).  The Supreme Court set an objective standard for determining "diligence" – whether a petitioner "made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." Williams, 529 U.S. at 435.  For example, when there is information in the record that would alert a reasonable attorney to the existence and importance of certain evidence, the attorney "fails" to develop the factual record if he does not make reasonable efforts to sufficiently investigate and present the evidence to the state court.  See id. at 438-40 (counsel lacked diligence because he was on notice of possibly material evidence and conducted only a cursory investigation); Alley v. Bell, 307 F.3d 380, 390-91 (6th Cir. 2002) (lack of diligence because petitioner knew of and raised claims of judicial bias and jury irregularities in state court, but failed to investigate all the factual grounds for such claims).

Absent unusual circumstances, diligence requires "that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." Williams,

529 U.S. at 437; <u>see</u> <u>Bragg v. Galaza</u>, 242 F.3d 1082, 1090 (9th Cir. 2001), <u>amended on denial of reh'g</u>, 253 F.3d 1150 (9th Cir. 2001) ("inactions show insufficient diligence" on ineffective counsel claim because petitioner did not request an evidentiary hearing, and brought claim only on appeal not in a collateral proceeding).   What is more, the mere request for an evidentiary hearing may not be sufficient to establish diligence if a reasonable person would have taken additional steps.   <u>See</u> <u>Dowthitt v. Johnson</u>, 230 F.3d 733, 758 (5th Cir. 2000) (petitioner requested hearing but found not diligent because he failed to present affidavits of family members that were easily obtained without court order and with minimal expense); <u>see also</u> <u>Koste v. Dormire</u>, 345 F.3d 974, 985-86 (8th Cir. 2003) (lack of diligence despite hearing request because petitioner made no effort to develop the record or assert any facts to support claim that his counsel was ineffective for knowing of and failing to investigate his psychiatric condition), <u>cert. denied</u>, 124 S. Ct. 2070 (2004).   If an evidentiary hearing is requested, a petitioner's inability to persuade a state court to conduct such a hearing does not in itself demonstrate lack of diligence.   <u>See</u> <u>Cardwell</u>, 152 F.3d at 338.

In sum, if this Court determines that a petitioner has not been diligent in establishing the factual basis for his claims in state court, then the Court may not conduct a hearing unless the petitioner satisfies one of § 2254(e)(2)'s narrow exceptions.   If, however, the petitioner has not failed to develop the factual basis of his claim in state court, the Court will then proceed to consider whether a hearing is appropriate or required under the criteria set forth by the Supreme Court in <u>Townsend</u>.   372 U.S. 293; <u>see</u> <u>Baja</u>, 187 F.3d at 1078 (quoting <u>Cardwell</u>, 152 F.3d at 337).

### **Expansion of the Record**

Rule 7 of the Rules Governing Section 2254 Cases authorizes a federal habeas court to expand the record to include additional material relevant to the determination of the merits of a petitioner's claims.   Rule 7 provides:

> The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath, to written interrogatories propounded by the judge.   Affidavits may also be submitted and considered as part of the record.

Rule 7(b), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.  The purpose of Rule 7 "is to enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing."  Advisory Committee Notes, Rule 7, 28 U.S.C. foll. § 2254; see also Blackledge v. Allison, 431 U.S. 63, 81-82 (1977).

Section 2254(e)(2), as amended by the AEDPA, limits a petitioner's ability to present new evidence through a Rule 7 motion to expand the record in the same manner as it does with regard to evidentiary hearings.  See Cooper-Smith v. Palmateer, 397 F.3d 1236, 1241 (9th Cir. 2005) (holding that the conditions of § 2254(e)(2) generally apply to petitioners seeking relief based on new evidence, even when they do not seek an evidentiary hearing) (citing Holland v. Jackson, 124 S. Ct. 2736, 2737 (2004) (per curiam)).  Thus, when a petitioner seeks to introduce, through a Rule 7 motion, new affidavits and other documents never presented in state court for the purpose of establishing the factual predicate of a claim, he must show both diligence in developing the factual basis in state court and relevancy of the evidence to his claim.  If diligence is not shown, the requirements of § 2254(e)(2) must be satisfied before the Court can consider expansion of the record.  To find otherwise would allow circumvention of the AEDPA's restriction against federal habeas courts holding evidentiary hearings in cases where the petitioner is at fault for failing to develop the facts in state court.

When a petitioner seeks to expand the record for reasons other than to introduce evidence to bolster the merits of his claim, the strictures of § 2254(e)(2) may not apply.  See Boyko v. Parke, 259 F.3d 781, 790 (7th Cir. 2001) (finding it nonsensical to apply § 2254(e)(2) when expansion of the record is used for reasons other than to introduce new factual information on the merits of a claim).  For example, expansion of the record may be appropriate to cure omissions in the state court record, see Dobbs v. Zant, 506 U.S. 357, 359 (1993) (per curiam) (reversing for failure to supplement the record with a late-discovered transcript); see also Rule 5, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (directing answering party to submit portions of record it deems relevant), or to establish diligence

1    pursuant to § 2254(e)(2).  See Boyko, 259 F.3d at 792.

2    **Discovery**

3    Rule 6(a) of the Rules Governing Section 2254 Cases ("Habeas Rules") provides that

4    "[a] judge may, for *good cause*, authorize a party to conduct discovery under the Federal

5    Rules of Civil Procedure, and may limit the extent of discovery."  Rule 6(a), 28 U.S.C. foll.

6    § 2254 (emphasis added).  Thus, unlike the usual civil litigant in federal court, a habeas

7    petitioner is not entitled to discovery "as a matter of ordinary course,"  Bracy v. Gramley,

8    520 U.S. 899, 904 (1997); see also Rich v. Calderon, 187 F.3d 1064, 1068 (9th Cir. 1999),

9    and a habeas court should not allow a habeas petitioner "to use federal discovery for fishing

10   expeditions to investigate mere speculation."  Calderon v. United States Dist. Court for the

11   Northern Dist. of Cal. (Nicolaus), 98 F.3d 1102, 1106 (9th Cir. 1996); see also Aubut v. State

12   of Maine, 431 F.2d 688, 689 (1st Cir. 1970) ("[h]abeas corpus is not a general form of relief

13   for those who seek to explore their case in search of its existence").  Pursuant to Bracy,

14   whether a petitioner has established "good cause" for discovery requires a habeas court to

15   determine the essential elements of the petitioner's substantive claim and evaluate whether

16   "specific allegations before the court show reason to believe that the petitioner may, if the

17   facts are fully developed, be able to demonstrate that he is . . . entitled to relief."  Id. at

18   908-09 (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)).

19   **MOTIONS DISCUSSION**

20   The Court now assesses whether expansion of the record, discovery and/or an

21   evidentiary hearing should be granted with respect to the exhausted claims for which

22   evidentiary development is sought:  Claims 1 (in part), 6, 10 and 32.

23   **Claim 1**

24   Claim 1 alleges that the trial court violated Petitioner's due process and impartial jury

25   trial rights by admitting testimony from Detective Gregory that he believed Petitioner

26   untruthfully claimed to have no memory of the events the night of the murder.  Petitioner

27   seeks discovery in support of this claim; specifically, to depose Detective Gregory regarding

28   "what qualifications he possesses to be an arbiter of truth: what training or education or

1    special skills that enable him to opine" on Petitioner's truthfulness.   (Dkt. 113 at 16.)

2    Petitioner utterly fails to explain how the requested discovery could be relevant to whether

3    the trial court erred in failing to sustain the defense objection to this testimony.   Petitioner

4    fails to demonstrate good cause and the motion will be denied.

5        **Claim 6**

6        Claim 6 alleges that Petitioner's right to confront witnesses and due process pursuant

7    to the Sixth and Fourteenth Amendments was violated by the sentencing court's denial of

8    discovery with which to impeach a State expert, neuropsychologist Dr. James Youngjohn.

9    Defense counsel learned that several complaints had been lodged against Dr. Youngjohn with

10   the Arizona State Board of Psychologist Examiners regarding his professional competence,

11   including complaints by defense experts, Drs. Walter and Blackwood, as well as other

12   complaints concerning Dr. Youngjohn's findings of malingering by subjects.   After

13   reviewing the complaints filed against Dr. Youngjohn *in camera*, the sentencing court denied

14   as irrelevant defense counsel's request for access to those complaints for purposes of

15   impeachment.

16       Petitioner seeks to expand the record with new expert opinions regarding the validity

17   of Dr. Youngjohn's testing and evaluation of Petitioner.   He also seeks permission to depose

18   Dr. Youngjohn, his graduate assistant, and Drs. Walter and Blackwood, and seeks discovery

19   of all documentation relating to Dr. Youngjohn's evaluation of Petitioner.   None of the

20   requested discovery or new expert opinions are relevant to the instant claim.   In reviewing

21   whether the sentencing court's denial of Petitioner's discovery request violated Petitioner's

22   constitutional rights, this Court must necessarily consider only that information that was

23   before the state court when it ruled.   Therefore, the requests to expand the record and for

24   discovery of material irrelevant to resolution of the claim will be denied.

25       Petitioner does not explicitly indicate whether he has copies of the complaints

26   reviewed *in camera* by the sentencing court and does not actually move for expansion of the

27   record to include these complaints.   However, in addition to the trial transcript, these

28   complaints are a relevant part of the state court record because they were reviewed by the

1    trial court and considered as a basis for denying Petitioner's motion for discovery.  To ensure

2    that both Petitioner and this Court have all parts of the record relevant to Claim 6, the Court

3    will direct Respondents, pursuant to Rule 7 of the Rules Governing Section 2254 Cases, to

4    provide, under seal, copies of the complaints against Dr. Youngjohn that were reviewed by

5    the trial court.

6            **Claim 10**

7            Claim 10 alleges a violation of Petitioner's Fourteenth Amendment due process rights

8    and his Eighth Amendment right against cruel and unusual punishment based on the

9    sentencing court's failure to consider and give mitigating weight to his abusive family history

10   absent a causal connection or nexus to the crime.  (Dkt. 82 at 95-99.)  Petitioner seeks an

11   evidentiary hearing and to expand the record with new affidavits, not presented in state court,

12   that support a causal connection or nexus between his abusive childhood and the crime.

13           Similar to Claim 6, none of the evidence Petitioner seeks to introduce and develop in

14   these proceedings is relevant to the instant claim.  In reviewing whether the sentencing court

15   failed to consider proffered mitigation evidence, this Court must necessarily consider only

16   that information that was before the state court when it sentenced Petitioner.  See Lockett,

17   438 U.S. at 604-05; Eddings, 455 U.S. at 114-15.  Therefore, the requests to expand the

18   record and for an evidentiary hearing will be denied.

19           **Claim 32**

20           Petitioner alleges that at the time of execution he will not die instantly and will feel

21   extreme pain as a result of the mixture of drugs used for lethal injection, in violation of the

22   Eighth Amendment's prohibition against cruel and unusual punishment. (Dkt. 82 at 205-22.)

23   Additionally, Petitioner contends that Arizona's lethal injection procedures pose a severe risk

24   of error as well as unnecessary pain and prolonged suffering. (Id.)

25           Petitioner seeks an evidentiary hearing to present testimony regarding the drugs used

26   in Arizona's lethal injection procedure and their effects.  Respondents assert lack of diligence

27   as a barrier to holding a federal evidentiary hearing.  Petitioner does not address this

28   argument in his reply.  Petitioner raised this claim on direct appeal, however, it does not

1    appear he made any attempt to develop the factual basis for the claim during trial or

2    sentencing.  In addition, he did not try to develop the claim in PCR proceedings.  Because

3    Petitioner did not make a reasonable attempt to develop the factual basis of this claim in state

4    court and does not allege that he can satisfy the requirements of 28 U.S.C. §§ 2254(e)(2)(A)

5    & (B), the Court finds he was not diligent and an evidentiary hearing on the merits of Claim

6    32 is barred.  See Williams, 529 U.S. at 435.

7          Petitioner also seeks discovery regarding Arizona's lethal injection protocol and post-

8    mortem information of persons executed in Arizona.  Petitioner has not established good

9    cause for the discovery he seeks.  The information Petitioner seeks to discover goes far

10   beyond the scope of the claim raised in state court.  Although the general claim as alleged

11   in the Amended Petition was exhausted, see Doerr, 193 Ariz. at 71, 969 P.2d at 118,

12   Petitioner did not fairly present in state court any of the specific allegations or operative facts

13   that he attempts to bolster with discovery.  In addition, because Petitioner did not diligently

14   develop the factual basis of this claim in state court, no information discovered could be

15   considered by this Court.  See Boyko, 259 F.3d at 792 (finding that discovery should not be

16   allowed to augment the merits of a petitioner's claims unless he was diligent); Murphy v.

17   Bradshaw, No. C-1-03-053, 2003 WL 23777736, *2 (S.D. Ohio 2003) ("there cannot be

18   good cause to discover facts which could not be presented because a petition is barred from

19   an evidentiary hearing on those facts under 28 U.S.C. § 2254(e)(2)"); Charles v. Baldwin,

20   No. CV-97-380-ST, 1999 WL 694716, at *2 (D. Or. Aug. 2, 1999) (no good cause for

21   discovery to locate evidence in support of the merits of a claim unless petitioner first satisfies

22   § 2254(e)(2)).  Petitioner's request for discovery will be denied.

23         Accordingly,

24         **IT IS ORDERED** that the following Claims are **DISMISSED WITH PREJUDICE**:

25   (a) Claims 1 (in part) and 35 for failure to state cognizable grounds for habeas relief;

26   (b) Claims 28 (in part) and 29 based on a procedural bar; and (c) Claims 8, 13, 28 (in part)

27   and 33 on the merits as a matter of law.

28         **IT IS FURTHER ORDERED** that Claim 34 is **DISMISSED WITHOUT**

1  **PREJUDICE** as premature.

2      **IT IS FURTHER ORDERED** that Petitioner's Motion for Record Expansion (dkt.

3  115) is **DENIED**.

4      **IT IS FURTHER ORDERED** that Petitioner's Motion for Discovery and an

5  Evidentiary Hearing (dkt. 113) is **DENIED**.

6      **IT IS FURTHER ORDERED** that within fifteen (15) days of this Order,

7  Respondents shall file **under seal** copies of the professional complaints lodged against Dr.

8  James Youngjohn, which were reviewed by the trial court.  Respondents shall also provide

9  copies to Petitioner's counsel, who shall, absent further Order of the Court, maintain

10  confidentiality of the documents.

11      **IT IS FURTHER ORDERED** that if, pursuant to LRCiv. 7.2(g), Petitioner or

12  Respondents file a Motion for Reconsideration of this Order, such motion shall be filed

13  within fifteen (15) days of the filing of this Order.

14       **IT IS FURTHER ORDERED** that the Clerk of Court forward a courtesy copy of

15  this Order to the Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix, AZ

16  85007-3329.
        DATED this 26th day of September, 2005.

17

18

19                          Paul G. Rosenblatt
20                          United States District Judge

21

22

23

24

25

26

27

28